Good afternoon, I'm Judge Gould, and I'm presiding today. I'm delighted to be sitting with my colleague, Judge Kristen, who's on my right, and with visiting Judge Lasnik, who's sitting on my left. Judge Kristen and I both appreciate Judge Lasnik taking time from his schedule and his busy docket to help the Ninth Circuit with our issues. And also, I believe I'd speak with the whole panel to thank all the advocates for their joining us here today in the courthouse for this argument. We've been sort of starved for the presence of face-to-face advocacy since early 2020, so we're just delighted to see you. We do have sort of a busy schedule, so if the parties can stick close to their allotted time, we would appreciate it. This case of Mann v. Tennis and Lozoya is set for 15 minutes per side. And for the appellants, we have Mr. Whitesides. That's correct, Your Honor. And for the appellants, Mr. Merritt. That's right. So, again, we'll let Mr. Whitesides begin as the appellant. And if you'd like to make a rebuttal argument, please try to stop it, hold back a little powder for rebuttal. That's fine, Your Honor. I plan on reserving five minutes for rebuttal. You will definitely remind me if I stray. I'll try to remind you, but you have to watch the clock yourself. I will. Of course, if any of the judges are asking you questions, my advice would be go ahead and answer fully, and I'll give you whatever time you need. Thank you, Your Honor. Thank you, Your Honor. The Mann v. Tennis decision, which was this panel's prior visitation with this case, instructed the district court to reexamine the complaint in light of the Roberts factors for gauging the intimacy of a relationship. An immediate primary issue upon remand became the language in both Roberts and Parrotted and Rotary Club that the associational liberty is applicable to the choice to enter into and maintain certain intimate relationships. It's a really different kind of a claim. Exactly. And because siblings do not choose to enter into their relationships, that choice is created for them by their parents, we're missing half of that. Well, the Supreme Court's never applied the Roberts, what we're calling Rotary Club, to this kind of a case. No, it hasn't. Right. What we know is that the Supreme Court has kept the protection focused on households, marriage, contraception, child rearing, and distinguished that from these large associations like a Rotary Club or the dance hall in Dallas v. Stanglin. But it hasn't really explored within a family, within relatives, where does the protection go. And this circuit has touched on that in a couple of places. Ward, which this panel addressed before. Ward is a different claim. Yes. Different kind of case, and we talked about that last time. We did. I'm bringing it up, Your Honor, as an example of an intimate association. But it's a 14th Amendment discussion. It's not a First Amendment case, right? You mean a First Amendment case? Right. Didn't I just say First Amendment? I thought you said Fourth. My mistake. It might have been mine, but forgive me if I misspoke. But it is a Ward 14th, and you're talking about, here, we're talking about a First Amendment case. Right. And all of the Supreme Court cases that we look at but for the one reference in Rotary Club are all dealing with the Due Process Clause. They're all talking about this fundamental liberty to choose. And if we go all the way back to Meyer v. Nebraska in the 1920s, and we bring it all the way through Moore-Cleveland and Roe v. Wade, there's this pigeonholing at times of certain amendments as coming into play. But the main focus has always been on the Due Process Clause. So this circuit, for the first time in Man 3, said, well, we're looking at it as a First Amendment claim. We didn't say that. We did not say that. We said this is the claim they brought. Ward doesn't control. The claim being advanced is not something that we decide. Well, the district court had dismissed the Due Process Claim. Right. Right. Because of Ward. Right. Right. And so the First Amendment was all that was left. Right. And the prior panel had said, we look at it the same way. Citing no authority. Yes. And that's what was the tension that the district court cited. Right. So if we put all that aside and we look at what's the fundamental choice that was made here, district court ruled out cohabitation, and this court said, okay, that's not necessary. And so then it said, well, what's the other choice that was made? Rotary Club said it wasn't dependent upon cohabitation. That was another something that had been inferred. But Rotary Club didn't say that. It said it's one thing we look at, but Rotary Club was never dependent upon cohabitation. Well, no, because in a Rotary Club you don't live together, right? Right. But the prior briefing from the parties got hung up. One of the things that got hung up on was whether or not cohabitation either is not required. Yes. Stay out of your way. Go ahead. Yes. And the district court ended up saying, well, we think the choice here, or I think the choice here, was to maintain the relationship. And so we have a legal dilemma there, because there is no precedent that says there's protection for a relationship, the creation of which wasn't freely chosen, but that you're maintaining. And then we had a secondary problem, which is if there is protection for a relationship that isn't created by free choice, where on the spectrum does that protection fall? Is it the same as marriage and procreation, or is it some lesser level of protection? And then the third problem we had was, are there enough facts to show that there was a choice to maintain? And we believe those facts have to be proximate to the time of death, because using the analogy of marriage and divorce, it doesn't matter whether you had protection when you got married. It ceases when you get divorced. Mr. Whitesides, isn't the real question, can under any circumstances adult siblings bring a claim under the federal constitution for the shooting death of the individual here? Or is it limited to father and children, or parent and children? Well, we've kind of pushed Judge Shub into untenable positions, but when you come right down to it, are there any cases that establish that a sibling can bring the kind of due process claim we're talking about here, or First Amendment claim, or Fourteenth Amendment claim? No. Only one, and that's the Tenth Circuit, and that requires a direct targeting of the relationship. So otherwise, no. Not at the circuit level, and not obviously at the Supreme Court level. And so what, of course, the first panel did was say, well, yeah, you can have protection for siblings, but only if they're cohabitating. As Judge Christin pointed out, we're not there anymore. So can there be another situation where siblings can have protection? And to repeat my answer, the only authority is only if it's deliberately targeted by the government. So that's our fundamental problem with the district court's ruling. There's also a factual problem because we don't think that the facts here show a mutual choice to have frequent emotionally significant interaction proximate to the time of death, because the facts are that he kept wanting to be alone, and they would go out and find him and bring him back, and then he'd take off again. So that's not enough to show a kind of close, frequent bond, like the Supreme Court described in the Foster or Smith, the foster care case, where they said the right stems from the intimacy that flows from daily interaction that you typically have in a household. The second main issue that I wanted to talk about is the qualified immunity analysis, because Mann, too, said it's the associational right that's an issue, and that's the right that was not properly factually pled. And this panel in no way touched that part of the ruling. It focused on the other cohabitation issue. The district court consistently stated that the plaintiff's view of looking at the decedent's right and the clarity, the establishment of that right was completely inconsistent with the first panel decision, and yet ultimately it embraced that view, not because it changed its mind or there was some new authority, but I believe from the clues we were given in the reporter's transcript, because he thought that this panel had somehow superseded and erased the prior panel decision. I mean, he uses the words, I'm going to go with Mann 3 because it's more recent. So that's the only explanation the record gives us as to why, after repeatedly saying to the plaintiffs, your qualified immunity analysis is unsupportable in light of the first panel decision, because the facts of the shooting haven't changed, and that clearly was wrong for him to say, well, no, I don't have to pay attention to that anymore. I can go in a different direction. So at this point, I only have four and a half minutes left, and I will stop. Thank you. Good afternoon, Your Honors. May it please the Court. My name is Mark Marin, and I represent Appalese here, the siblings of Joseph Mann, who was killed by Officers Tennis and Lozoya back on July 11, 2016. Just trying to address what Mr. Whitesides has emphasized, that there hasn't been a clear expression of the siblings' right under the First Amendment to bring such an action. Well, I think if you look at Rotary, which I have read countless times, and I have in front of me a sentence which I think just really invites us to bring this action on behalf of the siblings under the First Amendment. It says, we've emphasized that the First Amendment protects those relationships, including family relationships, that presuppose deep attachments and commitments to the necessarily few individuals with whom one shares not only a special community of thoughts, experience and beliefs, but also distinctively personal aspects of one's life. And it's that guidance which led Judge Shub to look very specifically at the complaint, the amended complaint, that included the details of the interaction and the relationship between these loving siblings. It's true that Joseph Mann was an unusual sibling later in his life. But I don't think anyone doubts the extraordinary relationship here. These siblings, your clients, went out of their way to help their brother, and that's not contested at all. And the facts of this case are horrendous. So I hope you don't understand that we're pushing back on that at all, but we are struggling with the cause of action, which really, just speaking for myself, it strikes me as a strong claim that the father brought, a due process claim, it's the kind of claim we would see typically, and that claim was settled. So now we have siblings who are very loving family members, and there isn't law extending this right. I just can't find anything really, certainly nothing controlling, recognizing this. So on the qualified immunity part of this, and I agree with Judge Lasnik that the district court was whipsawed, we can talk about that, but be that as it may, I really struggle to find any clearly established right here. So when we go to, I want to give you an opportunity to respond to my prong two problem on qualified immunity. Well, if you're looking for precedent that clearly addresses the siblings right under the First Amendment to bring in action when their sibling is killed, then I don't find any. It's true. Right, so Rotary, Jaycees, the Supreme Court's applying this First Amendment right, it's distinct from the 14th, it's not warred. We have said that very clearly, this panel said that. But it's still undeniable, I think, that they were applying, the Supreme Court has applied the Rotary Club that you were just reading from, that test, in a really different context, nothing like what we have here, and I want to give you a chance to respond. It's different, I agree. However, the language invites this claim. Now, the way I look at it is the parents of someone who's killed, the children of someone who's killed, perhaps the spouse itself, those are liberty relationships that are clearly protected under the 14th Amendment. You don't have to show how intimate they were. You don't have to get into the details of, well, gee, how frequently did they see each other, were they estranged, did they live together, did they even like each other? That's not a question. A father who loses a son, and the son may have been totally a renegade from the father's perspective, and still has a right. Whereas, because there is not a, let's say, as bright a line, a clear demarcation for siblings, they have the additional responsibility to prove the intimate relationship, the intimate association relationship. And I think that that's what we've stepped up to do here. We've shown that they have that relationship that is not just automatically protected by the 14th Amendment, but puts the burden on them to show that they were essentially injured. They were injured. So if I agree with you that Rotary leaves the door open for this kind of claim, but that the Supreme Court and the Ninth Circuit hasn't ever acknowledged such a claim by adult siblings, how do you get past the prong to qualified immunity? Well, I think you look at what Judge Shub looked at, at some length, and which this Court has also focused on. It's the conduct, the conduct which gave rise to the damages, which gave rise to the claim. The conduct was the killing of Joseph Mann. That was clearly unconstitutional. Now, the LaZoya and Tennis can't legitimately argue, well, gee, had we only known that Joseph Mann had siblings who were potentially claimants against us, then we never would have shot him. They can't argue that. And they don't claim they would argue that. They claim, in fact, they recognize that the killing was unjustified, or they accept that. They're not going to argue that it was justified. So I think that all the cases, even the more recent cases that we've pointed out, show that it's the conduct that's in question. You can't even imagine a case where an officer has to decide whether this particular person he's about to slay has family, sons, daughters, brothers, sisters, other loving persons in intimate relationships with whom he might be damaging if he were to shoot them. So that's untenable. I don't think we can look at the, quote, targeting of the relationship as a key to qualified immunity. What we look at is, was it clear to the officers that when they shot Joseph Mann, they were violating constitutional prohibitions? And I think the answer to that is clearly yes. It was uncontestable. So I don't see that there is a legitimate qualified immunity argument here. We wouldn't find officers justifying their conduct by saying, well, it wasn't clear to me that what I did was unconstitutional or illegal or going to hurt anybody. So I think while it's a difficult case because we haven't seen something that is clearly on all fours, which tells us, yes, these claimants have a right to proceed, I think under the guidance of Rotary, this is the case that they were talking about. It fits that bill. Mr. Marin, if I could, I'm a trial judge. I'm here at the courtesy of my colleagues who are appellate judges. As a trial judge, this is a nightmare to try to figure out, you know, how close were these siblings? And, well, they didn't live together, but, and as Judge Kristen said, your clients did wonderful things for their brother. But, you know, there's going to be another case where, well, you know, we had this big falling out, but, you know, we got together and we were going to live together or, you know, I didn't even know it was my brother because, you know, we separated at birth. I mean, I don't want to deal with those things as a trial judge. And some of them are, you know, factually going to be difficult to do on summary judgment because it's not as clear cut. Isn't it a policy that has been taken by the federal courts and the state courts in terms of wrongful death, who can sue, and why should we deviate from that? Well, I think that, yes, of course it's a policy question, and the Supreme Court has told us that. And what they've said is the family relationships, this is a family relationship, among other things. And if you're looking for the... I guarantee you the Supreme Court would not see this case that way. Well, I'm just quoting as I'm referring to the language that I quoted. And I think these are enduring relationships, and there are bright lines that could be drawn here. And one is that, that we're looking at enduring relationships. And if you look at the district court cases that have addressed these matters, you look at Cower, for instance, or you look at Graham. We're talking about fiancees. In one instance, of course, roommates were alleged to have a certain kind of closeness, but I think that may be outside the sphere. I understand the difficulty that trial judges have, but there are many other difficulties as well. Mr. Markley, could I interject a question, please? Certainly, Judge. Actually, I thought possibly Judge Blazenik's question was averting to this. There is a wrongful death statute that applies in this case. Not the survival statute that would give rights to the estate of man himself for his claims, but a wrongful death statute that empowers a relative to sue for their own damages. Since that statute says that brothers and sisters can't sue if there's a parent alive at the time of the death, isn't that a policy that was decided by the state law that's flatly contrary to the siblings' claims here? Can a 1983 claim be recognized that runs 180 degrees contrary to an otherwise apparently applicable state law? I don't think that the jurisdiction of the federal courts is limited by what the states may or may not do. If they choose to afford siblings the right to sue under a wrongful death statute or they deny that right, that doesn't address the fundamental federal protection under the First Amendment. And that, I believe, has been so clearly stated and applied by district courts and even by this court. In Lee, for instance, I think Lee recognized that, of course, it was a mother and son in that situation, but the mother had both First and Fourteenth Amendment claims, in part because her son was a victim of an illegal seizure under the Fourth Amendment as well as a Fourteenth Amendment deprivation. So I think that that lets us know that this is an expansive right that should extend to those who have these intimate relations. And I think that's the proper role for the First Amendment and 1983. Thank you, Mr. Wray. I have a second question. I might be wrong in this, but I was under the impression that the siblings were at one time joined as plaintiffs in the lawsuit brought by the father. Is that incorrect? That's an interesting question, Your Honor. I think that at one point they were mentioned as plaintiffs, but they were dismissed, not necessarily by the court, but the parties themselves settled not including the siblings, so that the settlement agreement didn't include the siblings. But if the siblings had been plaintiffs, if they were separately plaintiffs, then how could a settlement... That's probably a good question, but it's not to be addressed by me, since there was another firm that represented the father at that point, and I don't know what the logic was that led to that conclusion. Perhaps, and maybe this is speculation, but perhaps the siblings wanted to get to the bottom of what really happened, and the father was interested at the age of 93 or whatever to just get the matter resolved, and that was what drew that line, and also what propelled them to, the siblings, to seek a resolution and a remedy through this action that we've brought. Mr. Mayor, with my questions, I used up a lot of your time, so although we are trying to stay within the time, I'm going to add two minutes to your time. Well, I appreciate that, Your Honor. My colleague, Mr. Whitesides, objects to the brief that we wrote claiming that we were merely parroting Judge Shub, but I don't think there's any disgrace in parroting an erudite, thoughtful decision that went through all the points, including the issue that was bothering both maybe Judge Lasnik and Judge Kristin, and that is, where has it been previously stated that a sibling can bring to the court an action when the offense, the conduct, didn't target that relationship? And I think that what he said really clearly was that you have to look at the conduct, otherwise it would make no sense at all. Assuming there is a First Amendment right, you have to get to that, that there is a First Amendment right for siblings to defend, and I do rely upon the Supreme Court, and I think that that's the analysis that we are struggling with, how far does that extend. I think of enduring relationships as another key to intimate association. I think an enduring relationship is perhaps a bright line that would apply certainly to siblings. The other issue that Mr. Whitesides raised was this question of choice, and I think that is definitely a red herring, and it's a red herring because children don't choose their parents either. Siblings don't choose each other, so to say that children have a 14th Amendment right to sue when their parent is killed ignores this question of choice. There is no choice involved for a child. I think likewise if you had a step-parent or an adopted parent, adoptive parent, there is no choice involved there. I don't think choice is a bright line, but if it were, then this is a case where the siblings have chosen. They specifically sought out and brought their brother Joseph back to their fold and their protection. So with that, thank you. Unless there are further answers or questions, I'll rest. Thank you. Thank you, Mr. Marin. Mr. Whitesides. Well, Mr. Marin has once again invited you to not look at whether or not the right was clearly established, but rather at the officer's conduct, and as we have repeatedly pointed out, our appeal is not based on that prong of qualified immunity. It's based upon whether or not a constitutional violation has been pled and whether that right, which in this case is the right of association, was clearly established by the Supreme Court, this circuit, or a strong consensus of other circuits. And not through any lack of effort, Mr. Marin cannot cite to you a single case from any circuit that has recognized a sibling associational right other than the one Tenth Circuit case I cited, which does not avail his clients because it requires direct targeted interference. So the second thing that you didn't hear in his discussion about focusing on conduct is, how do you square that with the first panel decision? I mean, the shooting facts are the same now as then. So how could they say that the officers were entitled to a reversal on qualified immunity if the conduct obviously showed that there was a established right that was violated? You can't, and that's the dilemma the district court had. That was his argument with the prior panel decision. The other thing you heard was in response to the panel's questions about, where do the siblings get this protection, the answer you received was essentially biology. Well, they're family. Well, you can say that about aunts. You can say it about uncles. You can say it about grandparents. You can say it about cousins. They're all biologically related. And yet I'm not aware of any authority that suggests that they all automatically qualify for protection under Roberts. I mean, that's the problem with Roberts, as supposedly this bright line indication to the government that siblings are protected. As Judge Christin pointed out, the facts are so incredibly different. Roberts works great when you're contrasting a huge national organization with a nuclear family. Roberts doesn't work at all when you're trying to say, okay, do we draw the line after parents and spouses as to siblings or extended family like cousins and aunts and uncles? It doesn't help, because the criteria would be satisfied by almost every family relationship. And this circuit, as we pointed out in Wheeler, did say, few family relationships qualify for protection. And I don't think that was just a stray thoughtless comment. I think that was based on the fact that you have to have not only a formational choice, but that kind of daily interaction that you don't typically get with cousins and aunts and uncles who aren't living together. So, you know, I think that if we look at this case, there is no way that the plaintiffs can, and Mr. Marin graciously admitted, there is no way he can say there was controlling authority that established the right that's being sued upon under any amendment, much less the first. Thank you. Thanks, counsel. Thank you. I want to thank both counsel for their excellent advocacy. Man v. City of Sacramento shall now be submitted, and the parties will hear from us in due course. Thank you. Thank you, Your Honor. May I add on an administrative note that it is refreshing for us as well to be able to do this in person. Zoom has its place, but it is not the same. Very true. Well said. All rise. This court for this session stands adjourned.
judges: GOULD, CHRISTEN, Lasnik